IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

TIMOTHY MAGUIRE HATFIELD, aka McGuire,

          Plaintiff,

    v.

OREGON DEPARTMENT OF CORRECTIONS, and LT. FROST,

          Defendant.

Civ. No. 3:12-cv-00883-AC

FINDINGS AND RECOMMENDATION

_____

ACOSTA, Magistrate Judge:

*Introduction*

Plaintiff Timothy Maguire Hatfield ("Hatfield") alleged claims against the Oregon Department of Corrections ("ODOC") and Lieutenant Rochelle Frost ("Lieutenant Frost") (collectively "Defendants") for violations of his constitutional right to be free from cruel and

FINDINGS AND RECOMMENDATION    1    {KPR}

unusual punishment, as guaranteed by the Eighth Amendment to the United States Constitution. His claim arises from an injury allegedly sustained when he was ordered to move to the top bunk of the bed in his prison cell, in spite of a medical need for restriction to the bottom bunk. Hatfield seeks compensatory and non-economic damages in the amount of $500,000. Defendants move for summary judgment on this claim, arguing that it is barred by the Eleventh Amendment, no Eighth Amendment violation occurred, and, even if a violation occurred, Lieutenant Frost is shielded by qualified immunity. For the reasons stated, Defendants' motion should be granted.

*Background*

At the time of the events giving rise to this action, Hatfield was incarcerated at the Deer Ridge Correctional Institute ("Deer Ridge") in Madras, Oregon. Hatfield's complaint alleges that, since October 3, 2006, Hatfield has been restricted to use of the bottom bunk on the bunk bed in his jail cell. At fifty-four years of age, 330 pounds, and disabled, it was dangerous for him to attempt to use the top bunk. When Hatfield was told to start using the top bunk, he objected to an officer at the prison. Accounts vary as to whether it was Lieutenant Frost or another officer. The officer told Hatfield to stop complaining and that jail officials did not care if he was injured. When he attempted to reach the top bunk, he fell to the ground and injured his shoulder, an injury that causes him pain to this day.

Attached to Hatfield's complaint are several documents generated during his incarceration at Deer Ridge. They include a grievance, a misconduct report, a tort claim notice, and responsive documents from the Oregon Department of Administrative Services. The misconduct report is dated February 5, 2012, and was submitted by "J. Mata" (hereinafter referred to as "Officer Mata") and reviewed by Lieutenant Frost. (Complaint, Attachment 1 at 1.) It states that around 9 a.m. that

FINDINGS AND RECOMMENDATION    2    {KPR}

morning, an inmate approached Officer Mata and reported that Hatfield had fallen from his bunk. Officer Mata investigated and found Hatfield lying on his side on the floor of his cell. He did not detect any injuries based on a visual examination. Hatfield was taken to the infirmary where he was given ibuprofen and ice, and was then escorted back to his cell. Shortly thereafter, another officer asked whether Hatfield would "report to his assigned bunk at count time." *Id*. Hatfield told Officer Mata he would not report to his bunk and refused to comply with two direct orders to do so. After refusing the orders, Hatfield told officers to take him to "the hole," at which point he was escorted to disciplinary segregation.

On February 7, 2012, Hatfield filed a grievance related to the February 5, 2012, incident. According to Hatfield, at the time of the incident he was assigned to a bottom bunk, was moved to a top bunk in spite of his protests, and was told to shut up. According to Hatfield, he had previously been informed by a prison nurse that he would never be assigned to a top bunk position because he required the use of a CPAP[1] machine in order to sleep. In addition to the injuries sustained from his fall from the top bunk, Hatfield also claimed in the grievance that he was dragged to disciplinary segregation on his stomach and sustained a hernia. Hatfield further asserted that he had asked repeatedly for the use of a cane without success.

On March 2, 2012, Hatfield filed a tort notice claim regarding the events of February 5, 2012. It is consistent with Hatfield's grievances and the allegations in his present complaint. Hatfield stated, additionally, that the Department of Corrections would not do anything to address his shoulder injury or his hernia.

---

[1] CPAP refers to "Continuous Positive Airway Pressure," and a CPAP machine is "designed to assist persons with breathing problems, such as sleep apnea." (Fuzi Decl. ¶ 6.)

Danielle Fuzi, R.N. is the Medical Services Manager at Deer Ridge. (Fuzi Declaration ("Decl.") ¶ 1.) Her testimony, and the medical records attached thereto, reflect that "one-year lower level bunk orders were written on November 6, 2006, March 24, 2008, November 13, 2009, and on February 9, 2012, following his injury." (Fuzi Decl. ¶ 5, Att. 2.) Prior to Hatfield's fall, his lower bunk order had expired on November 12, 2011. On February 5, 2012, he was ordered onto the top bunk and less than an hour later, he reported falling from the top bunk. After his fall, he was not returned to the top bunk, and another one-year lower level bunk order issued on February 9, 2012.

*Discussion*

Defendants move for summary judgment on three grounds: (1) they are immune from suit under the Eleventh Amendment; (2) Hatfield cannot establish that Defendants violated his rights under the Eighth Amendment; and (3) Lieutenant Frost is entitled to qualified immunity. Hatfield filed both a response memorandum and a request for judicial notice.

Hatfield requests that the court take judicial notice of fraud by Defendants' counsel. His request refers to extensions of time obtained by fraud and an effort by ODOC staff to unnecessarily draw his blood. Hatfield states that he filed a habeas corpus petition arguing that blood draws are painful due to the nature of his veins and that ODOC staff have withheld medical care in exchange for blood draws, including Hatfield's request for a lower bunk assignment.

The doctrine of judicial notice allows a court to "take judicial notice of adjudicative facts that are 'not subject to reasonable dispute.' Facts are indisputable, and thus, subject to judicial notice, only if they are either 'generally known' under [FRE] 201(b)(1) or 'capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned' under [FRE] 201(b)(2)." *Id*. at 909-10. The information asserted by Hatfield for which he seeks judicial notice

FINDINGS AND RECOMMENDATION    4    {KPR}

does not fall into either category. Hatfield's allegations regarding the conduct of defense counsel and the nature of and motivation behind blood draws from Hatfield are neither generally known nor routinely verifiable. Accordingly, Hatfield's request for judicial notice is denied.

In his response to the motion for summary judgment, Hatfield argues that Defendants are not entitled to Eleventh Amendment immunity because of the passage of Measure 78 coupled with the continued operation of the courts and the ODOC in violation of separation of powers. Hatfield argues, in particular, that there is an unlawful nexus between the police and medical staffs at Deer Ridge. Hatfield also argues that the medical records included with the Fuzi Declaration are incomplete and are not from Deer Ridge, but from other ODOC facilities, and that they lack entries regarding the dispute over blood draws. He argues that his medical requests have resulted in retaliation. At the end of his brief, Hatfield alludes to fraud on the court and urges the court to deny summary judgment. Attached to this memorandum is a petition for habeas corpus filed against numerous defendants associated with the ODOC filed in Jefferson County Circuit Court as well as a ODOC Conduct Order detailing an incident on February 3, 2012, a few days prior to Hatfield's alleged fall from the top bunk.

With regard to the completeness of the medical records, the court notes that Fuzi attested to the accuracy of the medical records and notes that they are "regularly maintained in the normal course of business." (Fuzi Decl. ¶ 2.) The specific deficiency in the medical records identified by Hatfield is that the records lack entries associated with "the ongoing dispute over painful blood draws[.]" (Response 2.) This alleged deficiency, however, is unrelated to the claim as alleged by Hatfield in his complaint, where he refers only to the top bunk order and his resulting fall. Hatfield does not argue that the records are deficient in any relevant respect. The same is true for Hatfield's

allegation of retaliation for his repeated medical requests; the complaint does not allege retaliation for repeated medical requests and Hatfield's argumentation on this point is not relevant to the present motion. Similarly, the habeas corpus petition included with Hatfield's response materials is irrelevant to the present motion as it concerns the propriety of his incarceration, and not the events as alleged in the complaint. Finally, the conduct order referred to an unrelated incident involving Hatfield's noncompliance with a medical "call out" on February 3, 2012, and provided that Hatfield was confined to his cell for three days. Again, the material is not relevant to Hatfield's present claim as alleged. Accordingly, Hatfield's request for judicial notice of these additional documents is denied.

I.     Eleventh Amendment

"The Eleventh Amendment creates an important limitation on federal court jurisdiction, generally prohibiting federal courts from hearing suits brought by private citizens against state governments without the state's consent." *Sofamor Danek Group v. Brown*, 124 F.3d 1179, 1183 (9th Cir. 1997) (citing *Hans v. Louisiana*, 134 U.S. 1, 15 (1890)). Eleventh Amendment immunity extends to suits against state agencies. *Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993). Although the Eleventh Amendment bars suits against state officers who are sued in their official capacity for damages or other retroactive relief, it permits suits for prospective declaratory or injunctive relief against state officials acting in their official capacity. *Ex Parte Young*, 209 U.S. 123, 155-56 (1908). The Eleventh Amendment does not, however, bar suits for damages against state officials in their personal capacity. *Pena v. Gardner*, 976 F.2d 469, 472 (9th Cir. 1992)

A state official acting outside the scope of his or her employment may be held liable for their

actions. In *Stanfield v. Laccoarce*, 284 Or. 651, 588 P.2d 1271 (1978), the Oregon Supreme Court articulated three factors with which to evaluate whether conduct is within the scope of employment:

> In deciding whether an employee was acting within the scope of his employment, the factors to be considered are whether the act in question is of a kind the employee was hired to perform, whether the act occurred substantially within the authorized limits of time and space, and whether the employee was motivated, at least in part, by a purpose to serve the employer.

*Id*. at 655. The Oregon Supreme Court has characterized these three elements as "requirements," all of which must be met to demonstrate conduct within the scope of employment. *Lourim v. Swensen*, 147 Or. App. 425, 433, 936 P.2d 1011 (1997) (citing *Chesterman v. Barmon*, 305 Or. 439, 442, 753 P.2d 404 (1988)).

Here, Hatfield asserts, via section 1983, constitutional claims against ODOC, a state agency, and Lieutenant Frost, an employee of the state agency. The court first notes that claims under section 1983 are subject to Eleventh Amendment immunity. "The Supreme Court has made it clear that section1983 does not constitute an abrogation of the eleventh amendment immunity of the states." *O'Connor v. Nevada*, 686 F.2d 749, 750 (9th Cir. 1982) (citing *Quern v. Jordan*, 440 U.S. 332, 338-341 (1979)). Thus, Hatfield's claims against ODOC are clearly barred in this court. However, Lieutenant Frost's actions may give rise to liability to the extent they were performed outside of the scope of her employment.

Hatfield's claim against Lieutenant Frost is premised on the order he was given to use the top bunk in spite of his medical limitations. According to the paperwork submitted by Hatfield, the incident that resulted in his fall was reported to Lieutenant Frost by Officer Mata. However, Hatfield's allegations suggest that Lieutenant Frost herself ordered Hatfield onto the top bunk and told him both to shut up and that she did not care if he injured himself. Regardless of this ambiguity

in Hatfield's filings, Hatfield's claim against Lieutenant Frost stems from the order he received to use the top bunk and the comments allegedly made in the course of giving this order.

The act of giving an order to an inmate is clearly within a prison official's scope of employment. First, controlling the conduct of inmates is exactly the type of action a prison officer was hired to perform. Second, the alleged conduct took place at the prison and in the course of Lieutenant Frost's shift. There is no evidence suggesting the contrary. Third, there is no evidence that Lieutenant Frost was motived by anything other than the purpose of serving her employer, ODOC. Hatfield neither alleges nor presents evidence that Lieutenant Frost was motivated by personal animus. Accordingly, there is no genuine issue of fact as to whether Lieutenant Frost was acting within the scope of her employment when she ordered Hatfield onto the top bunk and Lieutenant Frost is therefore entitled to Eleventh Amendment immunity.

Hatfield challenges the application of Eleventh Amendment immunity in light of the recent passage of Measure 78 in Oregon. This measure is described by the Oregon Supreme Court: "Article III, section 1, was amended by Ballot Measure 78 (2012), to indicate that what formerly was known as the Judicial Department is a third branch, not a department, of state government." *Rachel M. Weldon, LPC v. Board of Licensed Professional Counselors & Therapists*, 353 Or. 85, 87 n.2, 293 P.3d 1023 (2012). The modifications to the Oregon constitution authorized by the passage of Measure 78 are minor and not substantive. The measure amended section 1, Article II such that the term "departments" is replaced by the term "branches" in two instances. It also amended section 17, Article IV, the article governing the legislative branch, from "Each house shall have all powers necessary for a branch of the Legislative Department, of a free and independant State" to "Each house shall have all powers necessary for a chamber of the Legislative Branch, of a free, and

independent State." The final amendment concerns the Secretary of State and is similarly cosmetic.

The passage of Measure 78 did not implicate the function of the judiciary or the legislature, and it did not modify the separation of powers between the branches of state government. Accordingly, the court rejects Hatfield's contention that Measure 78 in any way undermines the immunity provided for by the Eleventh Amendment to the United States Constitution.

II.     Eighth Amendment

The Eighth Amendment "imposes duties on prison officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates[.]'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-527 (1984)). To show a failure of this duty, a plaintiff must meet two requirements. "First, an inmate must demonstrate that the deprivation suffered was 'objectively, sufficiently serious.' The latter requirement has been defined as being 'deliberately indifferent' to an inmate's health or safety." *Wallis v. Baldwin*, 70 F.3d 1074, 1076 (9th Cir. 1994) (quoting *Farmer*, 511 U.S. at 834 (internal citation omitted)). To establish "deliberate indifference" an inmate must "show that the official knew of the risk and that the official inferred that substantial harm might result from the risk. The Supreme Court explained that a prison official need not have acted 'believing that harm actually would befall an inmate; it is enough that the official acted . . . despite his knowledge of a substantial risk of serious harm.'" *Wallis*, 70 F.3d at 1077 (quoting *Farmer*, 511 U.S. at 842).

As a general proposition, "requiring an able-bodied inmate to use a bunk bed does not deny him the minimal civilized measure of life's necessities" in violation of the Eighth Amendment's prohibition on cruel and unusual punishment. *Grushen v. Hedgpeth*, No. C 12-1860 SI (pr), 2012

U.S. Dist. LEXIS 92298, at *3 (N.D. Cal. July 3, 2012) (citing *Connolly v. County of Suffolk*, 533 F. Supp. 2d 236 (D. Mass. 2008)). In *Bradshaw v. Clements*, Civil No. 99-6029-ST, 1999 U.S. Dist. LEXIS 20994 (D. Or. Nov. 24, 1999), the plaintiff alleged an Eighth Amendment violation when, while the inmate was sleeping, officers removed a chair he used to climb onto the top bunk causing him to fall the next time he tried to get down from the top bunk. The officers claimed ignorance of the chair's purpose and cited a prison policy of permitting chairs and tables in a common room only. The court concluded that the chair's removal amounted to, at most, negligence and granted summary judgment to defendants.

Where an inmate is disabled, however, an upper bunk assignment may give rise to an Eighth Amendment claim. In *McDonald v. Yates*, 2012 U.S. Dist. LEXIS 176986 (E.D. Cal. Dec. 13, 2012), the inmate was denied a request for a lower bunk assignment in spite of a known seizure disorder. A few months later, the inmate suffered a seizure and fell from the top bunk, sustaining serious injuries. The court denied summary judgment, finding questions of fact as to whether prison officials disregarded a serious risk of harm to the inmate in assigning him to a top bunk.

However, not all disabilities give rise to a serious risk of harm associated with a top bunk assignment. The Tenth Circuit Court of Appeals affirmed dismissal of such a claim where the inmate had ongoing pain associated with a knee injury and an officer forced the inmate to move to a top bunk. *Campbell v. Singh*, No. 11-1468, U.S. App. LEXIS 18843, at *9 (Sept. 7, 2012). There, the evidence supported the officer's denial of knowledge of the risk, having reviewed the inmate's medical record for a lower bunk restriction and finding none.

The facts of this case are not meaningfully distinct from those in *Campbell*. Hatfield was granted several lower bunk orders of one year in duration. At the time of his fall, however, he was

under no such restriction. His most recent order had expired on November 12, 2011, almost three months before his fall on February 5, 2012. There is no evidence that Hatfield sought to renew his lower-bunk order. Thus, there was no objective evidence that a lower bunk restriction was necessary, Hatfield's verbal objections notwithstanding. In the absence of a such an order, it was not unreasonable to order Hatfield onto the top bunk, despite his less than ideal physical condition.

Furthermore, the present facts are also distinct from those in *McDonald*, the case involving the inmate with the seizure disorder who fell from his top bunk. The risk of serious harm involved in falling from the top bunk is unquestionably more substantial when the inmate is in the midst of a seizure. A fall taken while unconscious or otherwise unable to minimize physical injury has a greater potential for harm than the fall taken by an inmate who is aware of the possibility he or she might fall when climbing to the top bunk. Again, in the absence of a lower bunk order and the limited risk of harm faced by Hatfield, the court holds as a matter of law that no constitutional violation occurred. Accordingly, Defendants' motion for summary judgment against Hatfield's Eighth Amendment claim should be granted.

### III.     Qualified Immunity

A government official performing a discretionary function is entitled to qualified immunity so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (9th Cir. 1982). The Supreme Court set forth the standard for qualified immunity in *Saucier v. Katz*, 533 U.S. 194 (2001). A government official is entitled to qualified immunity unless his conduct both violated a constitutional right and the constitutional right was clearly defined such that "it would be clear to [the official] that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at

201-202.

> The district court's task is as follows:
>
> when qualified immunity is at stake, a court must first determine whether the law has been clearly established. If the court decides the law is clearly established, it must then decide whether a reasonable officer would have known that his conduct violated rights. At the third step in the inquiry, it is within the court's discretion to permit limited discovery to determine if there are genuine issues of material fact surrounding the reasonableness of the officer's conduct.

*Romero*, 931 F.2d at 628 (internal citations omitted). Having determined that no constitutional violation occurred, the court need not evaluate whether Lieutenant Frost would have been entitled to qualified immunity had she committed a constitutional violation.

## *Conclusion*

For the reasons stated, Defendants' Motion for Summary Judgment (#23) should be granted.

## *Scheduling Order*

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due May 23, 2013. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 9th day of May, 2013.

>              /s/ John V. Acosta
>         JOHN V. ACOSTA
>     United States Magistrate Judge