IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TIMOTHY MAGUIRE HATFIELD,
aka MCGUIRE,

                             No. 03:12-cv-00883-HZ

          Plaintiff,

  v.

OREGON DEPARTMENT OF                OPINION & ORDER
CORRECTIONS, and LT. FROST,

          Defendants

Wayne D. Landsverk
Michael Mohr
MILLER NASH LLP
3400 U.S. Bancorp Tower
111 S.W. Fifth Avenue
Portland, Oregon 97204

      Attorneys for Plaintiff

/ / /

/ / /

/ / /

1 - OPINION & ORDER

Ellen F. Rosenblum
ATTORNEY GENERAL
Michael R. Washington
SENIOR ASSISTANT ATTORNEY GENERAL
Department of Justice
1162 Court Street NE
Salem, Oregon 97301-4096

        Attorneys for Defendant

HERNANDEZ, District Judge:

        Plaintiff Timothy Hatfield brings this 42 U.S.C. § 1983 action against the Oregon

Department of Corrections and Lieutenant Rochelle Frost alleging a violation of his Eighth

Amendment rights.  His claim arises from an injury he sustained when he was ordered to move to

a top bunk, despite medical conditions allegedly requiring a restriction to a bottom bunk.

        Defendants move for summary judgment.  At the time Defendants filed their motion, this

case was assigned to Magistrate Judge Acosta who issued a Findings & Recommendation [30] on

May 9, 2013, recommending that Defendants' motion be granted.  In a September 23, 2013 Order

[43], I declined to adopt the Findings & Recommendation.  While I agreed with Judge Acosta

that the Oregon Department of Corrections as a state agency could not be sued in this action

because of Eleventh Amendment immunity, I disagreed with Judge Acosta that Eleventh

Amendment immunity extended to the individual Defendant Frost.  I also disagreed with his

conclusion that on the merits, Plaintiff's claim failed as a matter of law.

        As indicated in my September 23, 2013 Order, I had volunteer counsel appointed for

Plaintiff who had been proceeding *pro se*.  I allowed supplemental briefing by both parties and

had the case reassigned to my chambers.  Now, having considered the original motion and the

briefing before Judge Acosta, as well as the supplemental briefing, I deny the summary judgment

2 - OPINION & ORDER

motion because when the facts are construed in favor of the non-moving party, they are capable of supporting Plaintiff's claim.

BACKGROUND

In February 2012, Plaintiff was incarcerated at the Deer Ridge Correctional Institution (DRCI). Before his October 2006 incarceration, he suffered more than one knee injury to his right knee, severely limiting his ability to bend that knee. Pl.'s Decl. [46] at ¶ 1. As a result, he cannot safely climb ladders, including bunk bed ladders. Id. His history of injuries causes him to walk with a visually apparent limp. Id. at ¶ 2. Plaintiff weighs approximately 330 pounds and this, combined with his right knee injury, has caused "significant wear-and-tear" to his left knee. Id. at ¶ 1.

Plaintiff also uses a CPAP[1] machine while sleeping. Id. at ¶ 3. Plaintiff states that because of his permanently disabled knee and his use of a CPAP machine, he had requested and received numerous lower bunk restrictions during his incarceration. Id. He also requested and received a lower tier/bottom tier medical restriction, starting in November 2006. Id. at ¶ 4. According to Plaintiff, this required the prison to place him in a ground floor cell so he would not have to climb stairs. Id.

Medical records show that before February 2011, Plaintiff received orders restricting him to a lower bunk and/or lower tier on (1) November 6, 2006 while at Oregon State Penitentiary, (2) March 24, 2008 while at Three Rivers Correctional Institution, (3) November 13, 2009 while at Snake River Correctional Institution, and on (4) November 12, 2010, also while at Snake River

---

[1] CPAP refers to "Continuous Positive Airway Pressure." Fuzi Decl. [25] at ¶ 6. A CPAP machine is "designed to assist persons with breathing problems, such as sleep apnea." Id.

3 - OPINION & ORDER

Correctional Institution.  Fuzi Decl. at ¶ 5; Attchmt. 2 to Fuzi Decl.[2]

Plaintiff was transferred to DRCI on August 17, 2009.  Attchmt. 1 to Fuzi Decl. at 2.  He states that on February 3, 2012, he requested a renewal of his lower bunk restriction but was told by medical staff that an official restriction was unnecessary because no one would assign him to a top bunk while using a CPAP machine. Pl.'s Decl. at ¶ 5.  The top bunks have no place to store the machine.  Id.

According to Plaintiff, on February 5, 2012, Frost ordered him to use the top bunk during count time.  Id. at ¶ 6.  He told her it was unsafe for him to do so because his right knee prevented him from safely climbing the ladder to the top bunk and because he had a CPAP machine.  Id.  He states that Frost told him that she did not care if he got hurt climbing to the top bunk and that he would be sent to solitary confinement if he disobeyed her order.  Id.  Plaintiff further states that in attempting to climb up to the top bunk pursuant to Frost's order, he fell on the concrete floor of the cell and injured his shoulder.  Id. at ¶ 7.  He claims that the injury still causes him significant pain and restricts his activities.  Id.  Plaintiff asserts that after the fall and the shoulder injury, and still on the morning of February 5, 2012, Frost again ordered him to the top bunk.  Id. at ¶ 8.  He refused to follow her order because he was afraid he would further injure himself if he attempted to climb the ladder with his disabled knee.  Id.  As a result of not following her order, Plaintiff states that Frost ordered him to solitary confinement.  Id.

Frost submits a Declaration in which she states that contrary to Plaintiff's assertions, on

---

[2]  The November 6, 2006 Order is to a lower bunk and a lower tier.  Attchmt. 2 to Fuzi Decl. at 5.  The March 24, 2008 Order indicates that it is for a low bunk due to the CPAP machine, and was good for one year.  Id. at 4.  It additionally expressly states that top tier and stairs are "ok."  Id.  The November 13, 2009 and November 12, 2010 Orders restrict Plaintiff to a bottom/low bunk and bottom/low tier for one year.  Id. at 2, 3.

4 - OPINION & ORDER

February 5, 2012 she worked in the Officer-in-Charge's office in the Administration Building, a building which is separate from the housing units, from 5:15 a.m. until 9:15 p.m. Frost Decl. [55] at ¶ 5. She recalls no contact or conversation with Plaintiff concerning his bunk assignment on or before February 5, 2012. Id. She also states she has no personal knowledge of Plaintiff's medical conditions. Id. at ¶ 8.

Frost states that on February 4, 2012, Plaintiff received a "72-hour conduct order" for failure to follow orders and for being in an unauthorized area. Id. at ¶ 11. Because Plaintiff had no active bottom bunk restriction at that time, the previous one having expired in November 2011, Plaintiff was reassigned to a "non-incentive" upper bunk as a consequence of the "72-hour conduct order" so that an eligible inmate could be assigned to the lower bunk that Plaintiff had occupied. Id. Frost explains that bottom bunks are given to inmates with a bottom bunk restriction and to other inmates as a reward for continuous good behavior. Id. at ¶ 9. Frost did not personally relate the top bunk reassignment to Plaintiff, although the record suggests that she issued the reassignment order. Id. at ¶ 11; Platiro Decl. at ¶ 6 (stating that he gave Plaintiff the order to move from a lower bunk to a top bunk and that he received that order from the Officer-in-Charge on the unit at that time). According to Frost, Plaintiff was unhappy with the reassignment and within an hour reported that he had fallen from the top bunk and hurt his shoulder. Frost Decl. at ¶ 12.

Correctional Sergeant Maximo Platiro was working on Plaintiff's housing unit on February 5, 2012 in a relief officer capacity, meaning he moved from unit to unit giving officers relief during their breaks or assisting when they needed extra help. Platiro Decl. [54] at ¶¶ 5, 6. At 7:15 a.m., Platiro ordered Plaintiff to move from the bottom bunk to the top bunk. Id. at ¶ 6.

5 - OPINION & ORDER

Platiro received that order from the Officer-in-Charge on the unit at the time.  Id.

Platiro states that Plaintiff told him he could not be on a top bunk because of the CPAP machine, he was too heavy, and had bad knees creating a fall risk.  Id. at ¶ 8.  Platiro contacted Medical Services to inquire if Plaintiff needed a lower bunk because Platiro himself believed that the CPAP machine was a valid reason to stay on a lower bunk.  Id.  Medical Services told him that Plaintiff did not have a lower bunk restriction for his CPAP machine and that he would have to go to a top bunk.  Id.  Platiro gave Plaintiff an extra laundry bag so that he could hang his CPAP machine from his top bunk, allowing him to continue to use his CPAP machine at night.  Id.  Platiro also told Plaintiff that sick call was the next morning and he could request a lower bunk restriction at that time with Medical Services staff.  Id.  Platiro called Frost "at her post at the Officer-in-Charge office and notified her of the situation."  Id. at ¶ 11; Frost Decl. at ¶ 8 (stating that Platiro called her after he had spoken to Plaintiff about the top bunk assignment and it was then that Frost learned of Plaintiff's complaints of being too heavy, having bad knees, and using a CPAP machine; Frost learned from Platiro that Plaintiff had been instructed to go to sick call the next morning to resolve the situation).

Correctional Officer Jayvee Mata was assigned to Plaintiff's housing unit on February 5, 2012.  Mata Decl. [56] at ¶ 2.  At approximately 9:05 a.m., an inmate reported to Mata that Plaintiff had fallen from his bunk ladder.  Id. at ¶ 8.  Mata went to the bunk and found Plaintiff lying on his side on the floor.  Id. at ¶ 9.  Plaintiff told Mata that he had hurt his shoulder.  Id.  Mata observed no visible sign of blood or external injuries.  Id. at ¶ 10.  He notified the Control Center and responders arrived and took Plaintiff by wheelchair to Medical Services.  Id. at ¶ 11.  Sometime before 9:20 a.m., Medical Services called Mata to tell him that Plaintiff was fine and

would be returning to the unit.  Id. at ¶ 12.  The nurse who spoke with Mata told Mata that

Plaintiff had been instructed to ice his shoulder and take ibuprofen.  Id.  She did not state that

Plaintiff had been given a bottom bunk restriction.  Id.  Plaintiff was escorted back to the unit at

approximately 9:20 a.m.  Id. at ¶ 13.

At approximately 9:30 a.m., Sergeant Bill Workman called Mata to request that Mata ask

if Plaintiff was going to report to his top bunk at count time.  Id. at ¶ 14.  When asked, Plaintiff

responded that he would not report to the top bunk.  Id. at ¶ 15.  Mata then gave Plaintiff two

direct orders to report to his assigned top bunk at 10:30 a.m. for formal count time.  Id. at ¶ 16.

Plaintiff responded no both times.  Id.  Plaintiff was then placed in restraints and escorted to the

Disciplinary Segregation Unit (DSU).  Id. at ¶ 17.  Mata wrote a misconduct report for Plaintiff

charging him with Disobedience of an Order I and Unauthorized Area I.  Id.; Attchmt. 2 to Mata

Decl.  Frost reviewed and signed the misconduct report that day.  Attchmt. 2 to Mata Decl; Frost

Decl. at ¶ 14.

On February 9, 2012, Plaintiff received a one-year lower bunk restriction from Medical

Services because of his CPAP machine use.  Attchmt. 2 to Fuzi Decl. at 1; Frost Decl. at ¶ 16.

STANDARDS

Summary judgment is appropriate if there is no genuine dispute as to any material fact

and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The

moving party bears the initial responsibility of informing the court of the basis of its motion, and

identifying those portions of "'the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence

of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting

7 - OPINION & ORDER

former Fed. R. Civ. P. 56(c)).

Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to present "specific facts" showing a "genuine issue for trial." Fed. Trade Comm'n v. Stefanchik, 559 F.3d 924, 927-28 (9th Cir. 2009) (internal quotation marks omitted). The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. Bias v. Moynihan, 508 F.3d 1212, 1218 (9th Cir. 2007) (citing Celotex, 477 U.S. at 324).

The substantive law governing a claim determines whether a fact is material. Suever v. Connell, 579 F.3d 1047, 1056 (9th Cir. 2009). The court draws inferences from the facts in the light most favorable to the nonmoving party. Earl v. Nielsen Media Research, Inc., 658 F.3d 1108, 1112 (9th Cir. 2011).

If the factual context makes the nonmoving party's claim as to the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support his claim than would otherwise be necessary. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

DISCUSSION

A prison official violates the Eighth Amendment when he or she acts with deliberate indifference to the serious medical needs of an inmate. Crowley v. Bannister, 734 F.3d 967, 978 (9th Cir. 2013). The Eighth Amendment requires that prison officials "take reasonable measures to guarantee the safety of the inmates[.]" Farmer v. Brennan, 511 U.S. 825, 832 (1994) (internal quotation marks omitted).

For an inmate to bring a valid § 1983 claim against a prison official for a

violation of the Eighth Amendment, he must first "objectively show that he was
deprived of something 'sufficiently serious.'" Foster v. Runnels, 554 F.3d 807,
812 (9th Cir. 2009) (quoting Farmer v. Brennan, 511 U.S. 825, 834, 114 S. Ct.
1970, 128 L. Ed. 2d 811 (1994)). "A deprivation is sufficiently serious when the
prison official's act or omission results 'in the denial of the minimal civilized
measure of life's necessities.'" Id. (quoting Farmer, 511 U.S. at 834, 114 S. Ct.
1970).

　　　　Next, the inmate must "make a subjective showing that the deprivation
occurred with deliberate indifference to the inmate's health or safety." Foster, 554
F.3d at 812. To satisfy this subjective component of deliberate indifference, the
inmate must show that prison officials "kn[e]w [ ] of and disregard[ed]" the
substantial risk of harm, but the officials need not have intended any harm to
befall the inmate; "it is enough that the official acted or failed to act despite his
knowledge of a substantial risk of serious harm." Farmer, 511 U.S. at 837, 842,
114 S. Ct. 1970.

Lemire v. Cal. Dep't of Corr. & Rehab., 726 F.3d 1062, 1074 (9th Cir. 2013).

In their original motion, Defendants argued that Plaintiff could not meet his burden of

showing that objectively, the top bunk order created a serious risk of harm. Defendants

contended that without actually having a lower bunk order in place at the time of the incident on

February 5, 2012, Plaintiff could not satisfy the first prong of the Eighth Amendment analysis.

Defs.' Mem. [24] at 5-6. Defendants further argued that Plaintiff's claim additionally failed

because he could not show that Frost knew of yet disregarded a substantial risk of harm. Id. at 6-

7. Defendants argued that without a current lower bunk restriction in place, Frost could not have

been on notice that Plaintiff required such a restriction. Additionally, Defendants contended that

Plaintiff's statement to Frost that he possessed a lower bunk restriction was insufficient to impart

knowledge to Frost that a substantial risk of serious harm existed if he were assigned to the top

bunk. Id. Thus, Defendants moved for summary judgment on the merits of the Eighth

Amendment claim because, they argued, Plaintiff could not satisfy either of the elements required

to support an Eighth Amendment violation.

Judge Acosta recommended granting Defendants' motion, agreeing with Defendants that without a lower bunk restriction order, there was no objective evidence that a lower bunk restriction was necessary.  Findings & Rec. at 10-11.  He also concluded that Plaintiff faced a limited risk of harm because unlike the inmate with a seizure disorder in McDonald v. Yates, No. 1:09-cv-00730-LJO, 2012 WL 6514658 (E.D. Cal. Dec. 13, 2012), adopted 2013 WL 238904 (E.D. Cal. Jan 22, 2013), Plaintiff's condition meant only a possibility that he might fall when climbing to the top bunk.  Id. at 11.  Thus, he concluded that as a matter of law, no constitutional violation occurred.  Id.

As indicated above, I rejected Judge Acosta's conclusion because, while a "top-bunk assignment may create a more obvious risk of harm to an inmate with a seizure disorder than to Plaintiff in this case, Plaintiff has alleged that he has injuries to both knees, weighs 330 pounds, is 54 years old, and uses a CPAP machine." Sept. 23, 2013 Ord. at 4.  With those facts, I could not conclude that Plaintiff faced a limited risk of harm from the top bunk assignment.  Id.

In Plaintiff's Supplemental Response Memorandum [45], supported by Plaintiff's Declaration, Plaintiff relies on McDonald for the proposition that forcing a prisoner to use a top bunk when the prisoner's medical condition creates a substantial risk of falling out of the bunk and suffering an injury, is a sufficient harm under the Eighth Amendment.  Plaintiff argues that Plaintiff's medical history during his entire period of incarceration shows that he was consistently disabled, "meaning that the danger of him using a top bunk did not disappear simply because his most recent lower bunk restriction was dated more than one year before Lieutenant Frost's action."  Pl.'s Supp.'l Resp. Mem. at 6.  As noted above, according to Plaintiff's Declaration, his

10 - OPINION & ORDER

bottom bunk and bottom tier restrictions were issued in part because of his knee injuries and in part because of his CPAP machine use.  And, despite lapses in the applicable dates of the lower bunk restrictions, Plaintiff continued to be assigned to a lower bunk, indicating that the actual order made no difference to the bunk assignment.  See Pl.'s Decl. at ¶ 3 (stating that before the date of this incident, he had never been assigned to a top bunk).

Plaintiff argues that his medical history and sworn statements create an issue of fact as to whether Frost created a substantial risk of harm by ordering him to report to a top bunk before count time.  Additionally, the evidence, when viewed in a light most favorable to Plaintiff, is that he informed Frost that he was disabled and unable to climb to the top bunk.  His limp and 330-pound frame made it obvious that he was disabled and that it would be dangerous for him to climb to the top bunk.  These facts, Plaintiff argues, create an issue of fact as to whether Frost knew of the substantial risk of harm yet disregarded it.  Additionally, according to Plaintiff, Frost's deliberate indifference is further substantiated by her alleged statement to Plaintiff that she did not care if he injured himself while climbing to the top bunk.  In summary, Plaintiff argues, because Plaintiff explicitly told Frost that his disability made it dangerous for him to use the top bunk, because Plaintiff's visually apparent limp and his weight made the danger obvious, because his prison medical history included years of bottom bunk and bottom tier restrictions, because Frost told Plaintiff she did not care if he injured himself while climbing the ladder to the top bunk, and because Frost tried to force him back to the top bunk a second time after he fell, there are issues of fact on both the objective and subjective elements of the Eighth Amendment claim.

In Defendants' Supplemental Reply Memorandum [53], Defendants raise a completely

11 - OPINION & ORDER

new argument supported by the newly filed Declarations of Frost, Mata, and Platiro.  In their original motion Defendants argued that Frost did not violate Plaintiff's Eighth Amendment rights and was not deliberately indifferent to Plaintiff's serious medical needs.  Defendants never suggested that it was someone other than Frost herself who was involved in the incident with Plaintiff.  Now, for the first time, Defendants contend that Frost was never in the housing unit at the relevant time on February 5, 2012, was in another setting as the Officer-in-Charge, did not give the order to get onto the upper bunk, was not present at the time Plaintiff was given that order, and did not give Plaintiff the second order to get onto the upper bunk.  Defendants contend that Plaintiff cannot create an issue of fact with what Defendants label "conclusory assertions" in the face of the Declarations of Frost, Mata, and Platiro which, according to Defendants, establish that Frost was not responsible for the top bunk order and lacked sufficient knowledge of Plaintiff's medical condition to conclude that any actions she did take were "deliberately indifferent."  Given that this was an entirely new argument, completely contrary to the posture Defendants had previously taken and on which they had based their original motion, I granted Plaintiff's request to file a sur-reply.

Contrary to Defendants' argument, I agree with Plaintiff that Plaintiff's Declaration is substantial evidence sufficient to create an issue of fact.  The Declaration is based on Plaintiff's personal observations and contains specific allegations regarding the date, the place, the people involved, and the actions taken on February 5, 2012.  They are not conclusory allegations such as those in Arpin v. Santa Clara Valley Transportation Agency, the case cited by Defendants, where, in opposing the defendants' summary judgment motion on an excessive force claim, the plaintiff offered only a conclusory statement that she "did not resist arrest in any way," and failed to set

forth "any specific facts disputing Officer Stone's version of events" including the officer's report that she stiffened her arm and attempted to pull it away. 261 F.3d 912, 922, (9th Cir. 2001). In contrast, Plaintiff's Declaration alleges that Frost ordered him to the top bunk despite being informed of his disabled knees, weight, and use of the CPAP machine. Plaintiff's Declaration is not a conclusory allegation but is instead a description of the facts he observed. As much as Defendants would like to believe that Frost's, Mata's, and Platiro's Declarations, either singly or in combination, conclusively establish that no constitutional violation took place or that Frost was not the actor involved in issuing the top bunk order, they are mistaken. Plaintiff's Declaration is substantial evidence which creates a dispute as to who actually did what. It also creates issues of credibility. These issues are properly resolved only by the factfinder, not the court in the context of resolving a summary judgment motion. Given the factual assertions in Plaintiff's Declaration, I agree with Plaintiff that there are issues of fact as to both the objective and subjective elements of the Eighth Amendment claim because according to Plaintiff, Frost twice ordered him to the top bunk and did so while possessing information suggesting that it may be harmful for Plaintiff to climb up the stairs and could interfere with the use of his CPAP machine.

Moreover, examining the facts asserted in Defendants' Declarations in a light most favorable to Plaintiff, the non-moving party, a reasonable juror could conclude that Frost gave the order to place Plaintiff on the top bunk because according to Platiro, he received that order from the "Officer-in-Charge" who was Frost. While at that time Frost may or may not have known of all of Plaintiff's medical issues which Plaintiff argues should have resulted in a bottom bunk restriction, the evidence indicates that after ordering Plaintiff to the top bunk, Platiro

13 - OPINION & ORDER

contacted Frost and told her about Plaintiff's knees, his obesity, and his use of a CPAP machine. Nonetheless, Frost left the top bunk order in place. Finally, the evidence indicates that Frost knew that Plaintiff fell off the top bunk, was seen by Medical Services, and refused to return to the top bunk when he was returned to his cell but Frost nonetheless approved of the misconduct report and Plaintiff's placement in the DSU.

If the facts are construed in this manner, Plaintiff may be able to establish that Frost created a substantial risk of harm by enforcing the top bunk order with knowledge of Plaintiff's disabilities. See, e.g., Starr v. Baca, 652 F.3d 1202, 1206-07 (9th Cir. 2011) (a "showing that a supervisor acted, or failed to act, in a manner that was deliberately indifferent to an inmate's Eighth Amendment rights is sufficient to demonstrate the involvement—and the liability—of that supervisor"), cert. denied, 132 S. Ct. 2101 (2012); see also Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989) (a defendant may be held liable as a supervisor under section 1983 "if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation."). Thus, even relying on Defendants' own Declarations, summary judgment for Defendants is inappropriate.

Plaintiff's Declaration creates issues of fact. When the facts are construed in favor of Plaintiff, the non-moving party, they are capable of supporting Plaintiff's Eighth Amendment claim.

/ / /

/ / /

/ / /

14 - OPINION & ORDER

CONCLUSION

Defendants' motion for summary judgment [23] is denied.

IT IS SO ORDERED.

Dated this ___31___ day of _____March_____, 2014

Marco A. Hernandez
United States District Judge